# S E A L E D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

EGGS 'N THINGS INTERNATIONAL ) CIVIL NO. 11-00626 LEK-KSC
HOLDINGS PTE. LTD., ET AL., )
                           )
        Petitioners, )
                           )
    vs. )
                           )
ENT HOLDINGS LLC, )
                           )
        Respondent. )
_____ )

## ORDER GRANTING PETITIONERS' MOTION TO REMAND FOR
## LACK OF SUBJECT MATTER JURISDICTION AND FOR ATTORNEYS' FEES

      Before the Court is Petitioners Eggs 'N Things
International Holdings Pte. Ltd., a Singapore private limited
company ("ENT International"), Eggs 'N Things Japan, K.K., a
Japan company ("ENT Japan"), and Kouta Matsuda's (all
collectively "Petitioners") Motion to Remand for Lack of Subject
Matter Jurisdiction and for Attorneys' Fees ("Motion"), filed
under seal on November 4, 2011.[1] [Dkt. no. 23.] Respondent ENT
Holdings LLC, a Hawai`i limited liability company ("ENT Hawaii")
filed its memorandum in opposition under seal on
January 18, 2012.[2] [Dkt. no. 44.] Petitioners filed their reply

---

[1] The redacted version of Petitioners' Motion is docket
number 26.

[2] The redacted version of ENT Hawaii's memorandum in
opposition is docket number 46.

under seal on January 23, 2012.[3]  [Dkt. no. 50.]  This matter

came on for hearing on February 6, 2012.  Appearing on behalf of

Petitioners was Glenn Melchinger, Esq., and appearing on behalf

of ENT Hawaii was Philip Brown, Esq.  Yuka Nishizawa, the

principal of ENT Hawaii was also present.  After careful

consideration of the Motion, supporting and opposing memoranda,

and the arguments of counsel, Petitioners' Motion is HEREBY

GRANTED for the reasons set forth below.

## BACKGROUND

## I.    The Original Case

The instant case has its roots in a previous case: Eggs

'N Things International Holdings Pte. Ltd., et al. v. ENT

Holdings LLC, et al., CV 10-00298 JMS-LEK ("Eggs 'N Things #1").

The parties in Eggs 'N Things #1 were: Plaintiffs ENT

International and ENT Japan (collectively "the Original

Plaintiffs"); and Defendants ENT Hawaii,[4] FB Innovation Hawaii,

Inc., a Hawaii domestic corporation ("FB"), and Yuka Nishizawa

(collectively "the Original Defendants").

The relevant background of Eggs 'N Things 2010 is set

forth in this Court's Findings and Recommendation to Deny

Plaintiffs' Motion for Attorneys' Fees and Costs ("Fee F&R"), and

---

[3] The redacted version of Petitioners' reply is docket
number 49.

[4] ENT Hawaii is also referred to as "ENT HI".

this Court incorporates the following portion of Fee F&R in the instant Order:

> Eggs 'N Things is a breakfast restaurant in Waikiki ("ENT Waikiki"). Defendant ENT HI closed the restaurant on August 31, 2008. In mid-2008, Defendant Nishizawa, who is the sole member of Defendant ENT HI, began seeking private investors to gain needed capital. On March 21, 2009, Kouta Matsuda, an international entrepreneur, and Defendant ENT HI entered into a license agreement giving Mr. Matsuda franchise rights in certain international areas, including Japan ("the Agreement"). Some of these rights included: 1) the right to operate Eggs 'N Things ("ENT") restaurants directly or through subfranchises; 2) the right to use ENT trademarks, recipes, designs, trade dress, etc.; and 3) the right to create new menu items. Mr. Matsuda paid a franchise fee of 40,000,000 Japanese Yen and agreed to pay an additional one percent royalty on net revenue from sales within the franchises.

> Disputes subsequently arose relating to the Agreement. In September 2009, Plaintiff ENT Japan informed Defendant ENT HI that it found a location for a flagship ENT restaurant in Japan ("ENT Harajuku"). None of the Defendants responded. Plaintiff ENT Japan signed a lease for the location and began the process of opening ENT Harajuku.

> ENT Harajuku opened in February 2010 and held a grand opening in March 2010. On May 14, 2010, Plaintiffs discovered that Defendant ENT HI and/or Defendant FB had posted a disclaimer on ENT Waikiki's website, and in ENT Waikiki's storefront, stating, inter alia, that ENT Harajuku was not affiliated with ENT Waikiki ("the Disclaimer"). Plaintiffs state that they asked Defendants to remove the Disclaimer, but Defendants refused to do so. Plaintiffs filed an arbitration demand under the terms of the Agreement, and filed the instant action to seek provisional remedies to preserve the effectiveness of the arbitration proceedings.

Plaintiffs allege that the posting of the Disclaimer, and other actions enumerated in the First Amended Complaint, constitute: breach of contract; a violation of the Hawai`i Franchise Investment Law, Haw. Rev. Stat. Chapter 482E; unfair competition in violation of Haw. Rev. Stat. § 480-2; deceptive trade practices in violation of Haw. Rev. Stat. § 481A-3; and business defamation and commercial disparagement. Plaintiffs' First Amended Complaint sought: damages; interim and permanent injunctive relief; an order requiring alternative dispute resolution as required under the parties' Agreement; reasonable attorneys' fees and costs; and any other appropriate relief.

On May 19, 2010, Plaintiffs filed a Motion for Temporary Restraining Order/Preliminary Injunction against Defendant ENT HI ("TRO Motion"). On May 24, 2010, after the addition of Defendant FB and Defendant Nishizawa with the filing of the First Amended Complaint, Plaintiffs filed an Amended Motion for Temporary Restraining Order/Preliminary Injunction against Defendants ("Amended TRO Motion"). The district judge held a hearing on both motions on May 24, 2010 and orally granted the requests for a temporary restraining order in part and denied them in part. On May 27, 2010, the district judge issued a written order granting in part and denying in part the TRO Motion and the Amended TRO Motion ("TRO Order"). The TRO Order prohibited Defendants from displaying the Disclaimer and from making any further "false or misleading [statements] regarding the ENT brand in Japan or the Harajuku restaurant, including, but not limited to, any disclaimer of affiliation with Plaintiffs[.]" On June 23, 2010, the district judge approved and filed the parties' Stipulated Permanent Injunction and Order ("Stipulated Injunction"), and on September 7, 2010, the district judge approved and filed the parties' stipulation to dismiss all remaining claims and parties without prejudice. [Stipulation for Dismissal Without Prejudice as to Remaining Claims and Parties and Order, (dkt. no. 39) ("Stipulation for Dismissal").]

Eggs 'N Things #1, Civil No. 10-00298 JMS-LEK, 2010 WL 5834799,

4

at *1-2 (D. Hawai`i Dec. 16, 2010) (alterations in original) (some citations and footnote omitted).

In the motion for attorneys' fees, the Original Plaintiffs argued that the Stipulated Injunction rendered them the prevailing party, and they sought attorneys' fees against Defendant FB pursuant to Haw. Rev. Stat. § 480-13(a)(2) and Haw. Rev. Stat. § 481A-4(b). Id. at *2. Before turning to the attorneys' fee issue, however, this Court addressed whether the district court had jurisdiction over the case.

Both the Complaint and the First Amended Complaint alleged diversity jurisdiction. The First Amended Complaint alleged that Plaintiff ENT International is a Singapore private limited company with its principal place of business in Singapore, and Plaintiff ENT Japan is a Japan company with its sole place of business in Japan. It alleged that Defendant ENT HI's principal place of business is Hawai`i, and its sole member is Defendant Nishizawa. Further, Defendant FB is a Hawai`i corporation, and its sole officer and director is Defendant Nishizawa. Plaintiffs alleged that Defendant Nishizawa is a permanent resident alien and a Hawai'i citizen.

In its memorandum in opposition the (sic) instant Motion, Defendant FB states that Defendant Nishizawa is a Japan citizen who lives in the United States on a temporary work visa. Defendant FB also alleges that Defendant Nishizawa informed Mr. Matsuda of this fact during their negotiations over the purchase of ENT franchise rights. Defendant FB therefore argues that diversity jurisdiction is lacking because both Plaintiff ENT Japan and Defendant Nishizawa are Japanese citizens.

. . . .

5

Defendant Nishizawa's citizenship arguably destroys jurisdiction in two ways. First, complete diversity requires that every plaintiff be a citizen from a different state than every defendant. See In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008). Second, diversity jurisdiction does not include suits between a foreign plaintiff and a foreign defendant, even if there are also citizen defendants. See 28 U.S.C. § 1332(a); see also Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 991 (9th Cir. 1994) (citing Faysound Ltd. v. United Coconut Chem., Inc., 878 F.2d 290, 294 (9th Cir. 1989) (presence of citizen defendant does not save jurisdiction as to alien defendant in action brought by alien plaintiff) (some citations omitted)).

In light of Defendant Nishizawa's and Defendant ENT HI's citizenship, this district court arguably did not have jurisdiction over the case during most of the proceedings, including the entry of the Stipulated Injunction. On September 7, 2010, however, the Stipulation for Dismissal dismissed Defendant Nishizawa and Defendant ENT HI from this case. Federal Rule of Civil Procedure 21 states, in pertinent part: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." Thus, courts have recognized that, "[u]nder Rule 21, a district court can dismiss dispensable, nondiverse parties either before or after a final judgment." Dexia Credit Local v. Rogan, 602 F.3d 879, 883 (7th Cir. 2010) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 827, 832 n.6 (1989); Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 572-73 (2004) (some citations omitted)) (emphasis in original). Even in a case where the non-diverse defendant participated in the litigation, which culminated in a jury verdict and a post-verdict ruling of judgment as matter of law, the parties could stipulate to the dismissal of the non-diverse parties to preserve diversity jurisdiction on appeal. See Elliott v. Tilton, 89 F.3d 260, 261-62 (5th Cir. 1996). . . .

6

Id. at *7 (some alterations in original) (some citations and footnote omitted).  This Court found that the dismissal of Defendant ENT HI and Defendant Nishizawa in the Stipulation for Dismissal was just, and concluded that the district court had jurisdiction over the only parties remaining in the action: Plaintiff ENT International, Plaintiff ENT Japan, and Defendant FB.  Id. at *8 (citing § 1332(a)(2)).  The Court, however, ultimately found that the Original Plaintiffs were not entitled to an award of attorneys' fees and costs against Defendant FB under either § 480-13(a)(2) or § 481A-4(b) because neither the Stipulated Injunction nor the TRO Order rendered the Original Plaintiffs the prevailing party as to Count III and Count IV. Id. at *9-11.

United States District Judge J. Michael Seabright issued an order adopting the Fee F&R ("the Fee Order").  Eggs 'N Things #1, 2011 WL 676226 (D. Hawai`i Feb. 17, 2011).  The Fee Order stated, in pertinent part:

> Although Plaintiffs added Nishizawa as a Defendant in the Amended Complaint, the Stipulated Injunction is solely against FB and ENT Holdings-the parties agreed to dismiss Nishizawa as a party.  Under these facts, the court finds that Nishizawa is not an indispensable party such that her earlier dismissal from this action preserves the court's jurisdiction.  There is no prejudice to either Nishizawa or any of the other parties if the court maintains this action-the parties' Stipulated Injunction does not include Nishizawa, Nishizawa was dismissed from this action (by agreement of the parties), and the attorneys' fee issue is directed to FB only.

7

> Given this posture, Nishizawa was not needed for
> judgment and the parties have adequate remedies
> without Nishizawa present as a party.
>
> . . . .
>
> In sum, the court finds that to the extent
> the court did not have diversity jurisdiction due
> to Nishizawa's presence as a Defendant, she is not
> indispensable and has been dropped from this
> action such that the court retains jurisdiction.

Id. at *5-6.  Based on his own analysis, Judge Seabright also

concluded that the Original Plaintiffs were not entitled to

attorneys' fees pursuant to either § 480-13 or § 481A-4.  Id. at

*7-10.

## II.  **The Instant Case**

On or about October 14, 2011, Petitioners submitted a

"Motion for Order Confirming Partial Final Decision and Award of

Arbitrator, Dated July 25, 2011, and Final Decision and Award of

Arbitrator (Fees and Costs), Dated October 10, 2011" ("the

Petition") to the state court.[5]  In pertinent part, the

arbitrator awarded to Petitioners, as contract damages against

ENT Hawaii, the amount of fees that the Original Plaintiffs

incurred in Eggs 'N Things #1 because of the bad faith breach of

the Agreement's non-disparagement provision and the posting of

the Disclaimer.

---

[5] The Petition, which includes the Partial Final Decision
and Award of Arbitrator ("Arbitration Decision") and the Final
Decision and Award of Arbitrator (Fees and Costs) ("Arbitration
Fee Decision"), is filed under seal as Exhibit I to the Notice of
Removal.  [Dkt. no. 10-1.]

On October 18, 2011, ENT Hawaii removed the Petition to
this district court. [Notice of Removal (dkt. no. 1).] The
Notice of Removal states that there is diversity jurisdiction,
federal question jurisdiction, and enforcement jurisdiction over
the case. [Id. at ¶¶ 9, 11-12.] ENT Hawaii noted that the
complaint in Eggs 'N Things #1 stated that ENT International was
a Singapore private limited company, with its principal place of
business in Singapore, and ENT Japan was a Japan company with its
sole place of business in Japan. [Id. at ¶¶ 4-5.] The Notice of
Removal also states that Matsuda is a resident and citizen of
Japan, and ENT Hawaii is a Hawai`i limited liability company,
with its principal place of business in Hawai`i. Further, the
amount in controversy exceeds $75,000, exclusive of interest and
costs. [Id. at ¶¶ 6-8.] ENT Hawaii also emphasizes that the Fee
F&R and the Fee Order both ruled that there was diversity
jurisdiction in Eggs 'N Things #1. [Id. at ¶ 10.]

ENT Hawaii argues that there is both federal question
jurisdiction and enforcement jurisdiction because confirming the
Arbitration Decision would effectively overrule the Fee F&R and
the Fee Order. [Id. at ¶¶ 11-12.]

A. **Motion to Remand**

In the instant Motion, Petitioners argue that there is
no diversity jurisdiction because this Court found in the Fee F&R

that ENT Hawaii was a Japan citizen.[6]  Thus, there is no
diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because
Petitioners are citizens of either Japan or Singapore.
Petitioners point out that the Fee Order did not dispute the Fee
F&R's finding that ENT Hawaii is a Japan citizen, and they argue
that the finding of diversity jurisdiction in the Fee Order is
not relevant to the instant case because, at the time of the Fee
Order, FB was the only defendant remaining in Eggs 'N Things #1.
[Mem. in Supp. of Motion at 11-12 & n.14.]

Petitioners argue that, in order for a petition to
confirm an arbitration award to be removable to federal court,
the petition itself must contain a claim over which the federal
court would have had original jurisdiction.  Petitioners
emphasize that the arbitration did not deal with federal claims
and, even if it did, that would not be enough to support federal
question jurisdiction over the petition to confirm the award.
[Id. at 14-15.]

Petitioners acknowledge that an arbitrator's manifest
disregard of applicable federal law may support federal question
jurisdiction, but they emphasize that this a high standard.
Where the party seeking to confirm an arbitration award relies on

---

[6] Petitioners also argue that there would not be diversity
jurisdiction even if Nishizawa became a citizen of Hawai`i since
the time of Eggs 'N Things #1.  [Mem. in Supp. of Motion at 12.]
ENT Hawaii, however, has not alleged a change in Nishizawa's
citizenship.

state arbitration statutes as the basis for the petition, the removing party "*must establish in their petitions for confirmation or vacatur that the ultimate disposition of the matter by the federal court* **necessarily depends on resolution of a substantial question of federal law**." [Id. at 15 (citation and quotation marks omitted) (emphasis in original).]

Petitioners argue that: there is no substantial, stated federal issue in this case; the Petition does not establish federal question jurisdiction under the well-pleaded complaint rule; and ENT Hawaii's cross-motion to vacate the arbitration decisions, which is also its joint memorandum in opposition to the Petition ("Motion to Vacate"),[7] does not establish that the arbitrator manifestly disregarded **controlling** federal law. [Id. at 15-17.] Petitioners characterize the arguments in the Motion to Vacate as presenting only state law issues: "(a) the Arbitrator exceeded his contractually-defined powers by awarding damages allegedly not allowed by the License Agreement § 12.4 (Part III. A), or (b) refused to hear material evidence related to the attorney's fees request and the 10/10/11 Final Award (Part III.C)." [Id. at 17 (citation and quotation marks omitted).] Further, ENT Hawaii's argument that the arbitrator overruled the Fee Order fails to establish a federal question because the Fee

---

[7] ENT Hawaii filed the Motion to Vacate on October 21, 2011, as well as a sealed declaration of counsel in support of the Motion to Vacate on October 27, 2011. [Dkt. nos. 12, 18.]

Order only addressed statutory fee claims against FB, not contractual fee claims against ENT Hawaii.  [Id. at 18.]

Petitioners also point out that ENT Hawaii apparently argues that the arbitrator manifestly disregarded federal law as set forth in federal decisions ruling on motions for attorneys' fees.  ENT Hawaii argues that the arbitrator was required to follow federal rulings on: the appropriate hourly rates for Petitioners' counsel; the reduction of a fee award for limited success; and the reduction of a fee award for counsel's duplicate billing.  In the instant Motion, Petitioners argue that the federal rulings on these issues were not binding on the arbitrator because attorneys' fee awards are discretionary and depend on the resolution of factual issues.  [Id. at 19-20.] Petitioners note that the federal cases that ENT Hawaii relies on are inapplicable in the instant case because they address discretionary fee awards in civil rights actions.  [Id. at 23-24.]  Petitioners also emphasize that it is not enough that an arbitrator made a mistake of law.  In order to support federal jurisdiction for the manifest disregard of federal law, the arbitrator must have recognized that federal law applied and ignored the applicable law.  There is no evidence that the arbitrator did so in the instant case.  [Id. at 25-26.]

Further, as to the alleged enforcement jurisdiction, Petitioners argue that there is nothing to enforce because the

Fee Order addressed the entitlement to attorneys' fees against FB based on Chapter 480 and Chapter 481A, whereas the Arbitration Decision addresses attorneys' fees against ENT Hawaii under contract. FB was the only one of the Original Defendants subject to the Fee Order, and FB was not a party to the arbitration. The attorneys' fees claims in the Fee Order and the attorneys' fees claims in the arbitration were mutually exclusive, and the district court in Eggs 'N Things #1 could not have ruled upon the Original Plaintiffs' entitlement to attorneys' fees from ENT Hawaii. Thus, the Arbitration Decision did not overrule the Fee Order. [Id. at 27-29.]

Based on the foregoing, Petitioners argue that ENT Hawaii's asserted federal claims are frivolous and patently without merit. There is no federal jurisdiction, and the removal was therefore improper. Petitioners argue that, because there was no objectively reasonable basis for the removal and because there are unusual circumstances in this case, pursuant to 28 U.S.C. § 1447(c), they are entitled to an award of their attorneys' fees incurred as a result of the removal. [Id. at 30-31.]

B.    **Memorandum in Opposition**

In its memorandum in opposition to the Motion, ENT Hawaii emphasizes that the Original Plaintiffs alleged diversity jurisdiction in the Eggs 'N Thing #1 complaint. The Original

13

Plaintiffs sought provisional remedies to preserve the effectiveness of the arbitration proceeding. One of the forms of relief sought was an order requiring the Original Defendants to submit to mediation and/or arbitration pursuant to the Agreement. ENT Hawaii also emphasizes that, in the Stipulated Injunction, Judge Seabright retained jurisdiction over the action, including the enforcement of the permanent relief in the Stipulated Injunction. ENT Hawaii argues that this included retaining jurisdiction to ensure that the parties followed the district court's orders issued in Eggs 'N Thing #1 during the arbitration. ENT Hawaii argues that the Original Plaintiffs must have contemplated this or they would not have pled in the complaint for relief to protect the effectiveness of the arbitration proceeding. [Mem. in Opp. at 1-3.]

ENT Hawaii acknowledges that the rulings in the Fee Order were directed to FB only and that Nishizawa was not a party to the Stipulated Injunction. ENT Hawaii, however, emphasizes that the Fee F&R stated that Nishizawa did not face any personal liability for attorneys' fees. [Id. at 3-4 & n.2.]

ENT Hawaii argues that, during the arbitration, Petitioners took a "third bite at the apple" on the attorneys' fee issue. ENT Hawaii alleges that Petitioners asked the arbitrator to disregard the Fee F&R and the Fee Order and "award attorneys fees to Petitioners against ENT HOLDINGS for work

14

purportedly performed 'because FB refused to discontinue posting of the disclaimer.'" [Id. at 4 (quoting Fee F&R, 2010 WL 5834799, at *3).] ENT Hawaii argues that the arbitrator disregarded the Fee Order by: 1) finding that the publication of the Disclaimer was done with fault constituting both negligence and a breach of the Agreement, even though Judge Seabright found that Nishizawa did not have the requisite willfulness to support an award of fees under Chapter 481E; 2) awarding Petitioners attorneys' fees incurred in Eggs 'N Thing #1 even though the Fee F&R and the Fee Order concluded that the Original Plaintiffs were not entitled to an award of attorneys' fees; and 3) awarding greater attorneys fees than the Original Plaintiffs sought, but were denied, in the Fee Order. [Id. at 5-6.] Thus, ENT Hawaii argues that the Arbitration Decision nullifies the Fee Order. [Id. at 7.]

ENT Hawaii argues that, even if federal jurisdiction would not otherwise exist, the district court has ancillary jurisdiction because confirming the Arbitration Decision would effectively nullify the Fee Order in Eggs 'N Things #1 because it would sanction an award of attorneys' fees that the Fee Order specifically considered and refused to award. The arbitrator was aware of the Fee Order, a controlling decision, and he acknowledged that the parties could not revisit the issues in that order pursuant to the doctrine of collateral estoppel. ENT

15

Hawaii contends that the arbitrator exceeded his authority by awarding Petitioners attorneys' fees for work in Eggs 'N Things #1 that the Fee Order had already denied. [Id. at 8-10, 12.]

ENT Hawaii argues that, in the motion for attorneys' fees in Eggs 'N Things #1, the Original Plaintiffs sought $82,157.04 in attorneys' fees from Defendant FB. The Original Plaintiffs contended that Defendant FB alone was liable for these fees, although virtually all of the fees were incurred in litigating claims against both ENT Hawaii and FB. Although both the Fee F&R and the Fee Order concluded that the Original Plaintiffs were not entitled to recover those fees from FB, Petitioners asked the arbitrator to award the same fees against ENT Hawaii, contrary to the earlier position that FB alone was liable for those fees under Chapter 480 and Chapter 481A. [Id. at 10-12.] ENT Hawaii also emphasizes that the Fee F&R noted that, to the extent that the Original Plaintiffs had a right to recover attorneys' fees based on the Disclaimer, it was under a theory of assumpsit, and attorneys' fees would only be available according to Haw. Rev. Stat. § 607-14. Such a request had to be filed within fourteen days of the entry of judgment, and the Original Plaintiffs did not file such a request. [Id. at 12 (citing Fee F&R, 2010 WL 5834799, at *9).]

ENT Hawaii argues that there is federal question jurisdiction because the arbitrator's manifest disregard of the

16

applicable federal law in the Fee F&R and the Fee Order creates a substantial federal question. [Id. at 14.] Further, because the federal court has federal question jurisdiction over the Petition to the extent that it 1) seeks to confirm the Arbitration Decision which manifestly disregarded federal law, and 2) retained jurisdiction in the Stipulated Injunction, the federal court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining claims in the Petition and ENT Hawaii's Motion to Vacate. [Id. at 17-18.]

ENT Hawaii argues that, if the Court concludes that it does not have jurisdiction over the arbitration, it should revisit the issue whether it had jurisdiction to issue any of the orders in Eggs 'N Things #1. If the district court never had jurisdiction over Eggs 'N Things #1, it must, pursuant to Fed. R. Civ. P. 60(b)(4), vacate those orders and relieve ENT Hawaii of any obligations that it had under those orders, including any obligations resulting from the Arbitration Decision because ENT Hawaii apparently contends that it only entered into the arbitration because of the order in Eggs 'N Things #1. ENT Hawaii also argues that the Court should dismiss Eggs 'N Things #1 pursuant to Fed. R. Civ. P. 12(b)(1). [Id. at 18-20.]

Even if the Court grants the Motion and remands the case, the Court should not award removal-related attorneys' fees pursuant to § 1447(c). ENT Hawaii argues that it had an

17

objectively reasonable basis to remove the case, for the reasons discussed above.  [<u>Id.</u> at 23.]

    **C.**    <u>**Reply**</u>

      In their reply, Petitioners reiterate many of the arguments they raised in the Motion.  Petitioners also argue that there is nothing in the Fee Order to enforce when a court reviews the Arbitration Decision because the Fee Order and the Arbitration Decision address different parties and different bases for the award of attorneys' fees.  Petitioners contend that only FB would have standing to enforce the Fee Order.  [Reply at 2.]  Further, there is no binding precedent requiring arbitrators to give federal judgments preclusive effect.  [<u>Id.</u> at 2-3 & n.4.] Petitioners also emphasize that ENT Hawaii has not identified any authority contradicting the rule announced by the United States Supreme Court that a district court's enforcement powers under the All Writs Act and § 1367 do not confer removal jurisdiction. [<u>Id.</u> at 3 & n.6 (citing <u>Syngenta Crop Prot., Inc. v. Henson</u>, 537 U.S. 28, 33-34 (2002)).]

      Petitioners argue that the instant Motion is not the proper place to raise Rule 60(b)(4) and Rule 12(b)(1) challenges to the orders in <u>Eggs 'N Things #1</u>.  Further, ENT Hawaii does not have standing to bring those challenges because it was dismissed from <u>Eggs 'N Things #1</u> and was not a party to the Fee Order. [<u>Id.</u> at 3.]

As to the argument that the Original Plaintiffs represented in the motion for attorneys' fees that only FB was liable for the Original Plaintiffs' fees in Eggs 'N Things #1, Petitioners point out that what the motion for attorneys' fees actually said was that the Original Plaintiffs were seeking fees from FB alone because FB was the only party over which the federal court had jurisdiction and because FB was not a party to the Agreement.  Further, the Fee F&R expressed no opinion on any motion for attorneys' fees against FB under § 607-14 because the issue was moot.  The Fee Order also stated that the fact that the TRO Order was limited to the breach of contract claim would not prevent the Original Plaintiffs from attaining prevailing party status on the Chapter 481A claim.  [Id. at 6-8.]

Petitioners also argue that there is no ancillary or supplemental jurisdiction because the Petition does not present a post-judgment enforcement matter.  Only FB would be able to bring enforcement proceedings because only it was a party to the orders in Eggs 'N Things #1.  [Id. at 8-9.]

Further, the Fee F&R and Fee Order could not be clearly applicable federal law which the arbitrator was required to follow because they addressed state law claims in a diversity action.  The findings and conclusions therein do not become federal law just because they were issued in a federal case.  Further, the arbitrator did not disregard the Fee Order because

he found that it had preclusive effect as to Petitioners' Chapter 481A claims against ENT Hawaii. Even if the arbitrator misapplied preclusion law, that does not automatically create federal jurisdiction or justify vacating the award. [Id. at 9-11.]

As to the issue of attorneys' fees under § 1447(c), Petitioners reiterate the arguments in the Motion and argue that there are unusual circumstances in this case warranting an award because of the bad faith behavior ENT Hawaii has engaged in by invoking federal jurisdiction after the Fee F&R and Fee Order concluded that there was only diversity jurisdiction over FB. [Id. at 13.]

**STANDARD**

ENT Hawaii removed the instant case pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. [Notice of Removal at pg. 1.] At the time ENT Hawaii filed its Notice of Removal, § 1441 provided, in pertinent part:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.
>
> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution,

treaties or laws of the United States shall be
removable without regard to the citizenship or
residence of the parties.  Any other such action
shall be removable only if none of the parties in
interest properly joined and served as defendants
is a citizen of the State in which such action is
brought.

(c) Whenever a separate and independent claim
or cause of action within the jurisdiction
conferred by section 1331 of this title is joined
with one or more otherwise non-removable claims or
causes of action, the entire case may be removed
and the district court may determine all issues
therein, or, in its discretion, may remand all
matters in which State law predominates.

28 U.S.C. § 1441(a)-(c) (2011).

Section 1441 is strictly construed against removal, and
courts resolve any doubts about the propriety of removal in favor
of remanding the case to state court.  <u>Durham v. Lockheed Martin
Corp.</u>, 445 F.3d 1247, 1252 (9th Cir. 2006).  The removing party
bears the burden of establishing the existence of federal
jurisdiction.  <u>California ex rel. Lockyer v. Dynegy, Inc.</u>, 375
F.3d 831, 838 (9th Cir. 2004).

**DISCUSSION**

ENT HI has alleged several bases for federal
jurisdiction – diversity jurisdiction, retained jurisdiction,
ancillary jurisdiction, and federal question jurisdiction.

**I.   Diversity Jurisdiction**

In the Notice of Removal, ENT Hawaii argued that there
is complete diversity among the parties and the amount in
controversy exceeds $75,000, excluding interest and costs.

21

[Notice of Removal at ¶ 9.]  The Notice of Removal asserts that ENT International is a Singapore citizen, and ENT Japan and Matsuda are Japan citizens.  [Id. at ¶¶ 4-6.]  It also alleges that ENT Hawaii "is a Hawaii limited liability company and its principal place of business is Hawaii."  [Id. at ¶ 7.]

In the Fee F&R, however, this Court found that, because Nishizawa, a Japan citizen, was the sole member of ENT Hawaii, ENT Hawaii was a citizen of Japan for diversity jurisdiction purposes and ENT Hawaii's citizenship had the same impact on Eggs 'N Things #1 as Nishizawa's citizenship.  2010 WL 5834799, at *7 n.5.  Judge Seabright found that, although the district court did not have diversity jurisdiction with Nishizawa as a defendant, the court retained jurisdiction over the action because she was not indispensable and had been dismissed as a party.  Fee Order, 2011 WL 676226, at *6.  Although Judge Seabright did not make specific findings about the citizenship of ENT Hawaii, he neither rejected nor contradicted this Court's findings regarding ENT Hawaii's citizenship.  The Court also notes that ENT Hawaii's memorandum in opposition to the instant Motion does not address the issue of diversity jurisdiction, except to note that the Original Plaintiffs alleged diversity jurisdiction in both the Complaint and First Amended Complaint in Eggs 'N Things #1.  Those allegations alone, however, do not

constitute a ruling that the district court actually had diversity jurisdiction over ENT Hawaii in Eggs 'N Things #1.

This Court therefore FINDS that ENT Hawaii is a Japan citizen for purposes of the diversity jurisdiction analysis. Further, the Court CONCLUDES that there is no diversity jurisdiction over the instant case because complete diversity is lacking, see In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008),[8] and because diversity jurisdiction does not include suits between a foreign plaintiff and a foreign defendant, see 28 U.S.C. § 1332(a) (2011).[9]

---

[8] In Digimarc, the Ninth Circuit stated: "Diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff." 549 F.3d at 1234 (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806)).

[9] At the time ENT Hawaii filed its Notice of Removal, § 1332(a) provided, in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
> . . . .
>> (2) citizens of a State and citizens or subjects of a foreign state;
>> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
> For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a

(continued...)

## II.  **Effect of the Orders in Eggs 'N Things #1**

ENT Hawaii argues that the orders issued by this district court in Eggs 'N Things #1 are the basis for federal jurisdiction over the instant case because: 1) the district court expressly retained jurisdiction in the Stipulated Injunction, and Eggs 'N Things #1 and the instant case essentially constitute one matter; 2) the district court has ancillary jurisdiction to effectuate its orders in Eggs 'N Things #1; and 3) there is federal question jurisdiction because the arbitrator manifestly disregarded the applicable federal law set forth in the orders in Eggs 'N Things #1.

### A.  **Retained Jurisdiction**

The Stipulated Injunction states that: "The Court retains jurisdiction over Defendants and this action for all purposes, including the enforcement the (sic) permanent injunctive relief stipulated to herein." [Eggs 'N Things #1, Stipulated Injunction, filed 6/23/10 (dkt. no. 34), at 2-3.]

ENT Hawaii characterizes the arbitration as a proceeding that the parties entered into pursuant to the district court's orders in Eggs 'N Things #1. Thus, ENT Hawaii argues that the instant action, in which the parties seek to either confirm or vacate the arbitration decisions, is essentially the

---

[9](...continued)
        citizen of the State in which such alien is
        domiciled.

same matter as <u>Eggs 'N Things #1</u>, which the district court
continues to have jurisdiction of "for all purposes[.]" It is
true that the First Amended Complaint in <u>Eggs 'N Things #1</u>
sought, *inter alia*, "[a]n order requiring [the Original]
Defendants to submit to mediation and/or arbitration as required
under the Agreement" and "remedies 'to protect the effectiveness
of the arbitration proceeding'" pursuant to Haw. Rev. Stat.
§ 658A-8(a). [<u>Id.</u>, First Amended Complaint, filed 5/21/10 (dkt.
no. 13), at 25.] This district court, however, never ordered the
parties to arbitrate. The Stipulated Injunction only ordered the
Original Defendants to remove the Disclaimer and prohibited the
Original Defendants and

> its (sic) agents, officers, employees, or any
> person in active concert or participation with
> Defendants, from making or posting any statement
> or publication of any kind, oral or written, that
> is false or misleading regarding the ENT brand in
> Japan or the Harajuku restaurant, including, but
> not limited to, any disclaimer of affiliation with
> [the Original] Plaintiffs[.[10]]

[<u>Id.</u>, Stipulated Injunction at 2.] The only mention of the
arbitration in the Stipulated Injunction was to state that the
prohibition against disclaimers of the Original Defendants'
affiliation with the Original Plaintiffs did not apply to the
filings in arbitration proceedings. [<u>Id.</u>] The district court in

---

[10] This is the same relief that Judge Seabright ordered in
his TRO Order. [<u>Eggs 'N Things #1</u>, filed 5/27/10 (dkt. no. 26),
at 12-13.]

25

<u>Eggs 'N Things #1</u> did not rule on any of the Original Plaintiffs'

other claims in the First Amended Complaint because, after the

issuance of the Stipulated Injunction, Judge Seabright approved

the Stipulation for Dismissal, which dismissed Nishizawa and ENT

Hawaii as defendants and dismissed with prejudice all remaining

claims in the case.  [<u>Eggs 'N Things #1</u>, Stip. for Dismissal,

filed 9/7/10 (dkt. no. 39).]  Thus, the district court in <u>Eggs 'N

Things #1</u> never issued a ruling compelling any of the Original

Defendants to arbitrate with the Original Plaintiffs.

The Court therefore CONCLUDES that, because the

district court in <u>Eggs 'N Things #1</u> never compelled the Original

Plaintiffs and the Original Defendants to arbitrate, the instant

action regarding the arbitration decisions is not encompassed

within the jurisdiction that Judge Seabright retained over <u>Eggs

'N Things #1</u>.

**B.  <u>Ancillary Jurisdiction</u>**

"Federal courts have ancillary jurisdiction 'over some

matters (otherwise beyond their competence) that are incidental

to other matters properly before them.'"  <u>Alvarado v. Table

Mountain Rancheria</u>, 509 F.3d 1008, 1017 (9th Cir. 2007) (citing

<u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 378

(1994)).  The Ninth Circuit has also recognized that "[a]ncillary

jurisdiction may rest on one of two bases: (1) to permit

disposition by a single court of factually interdependent claims,

and (2) to enable a court to vindicate its authority and effectuate its decrees." In re Valdez Fisheries Dev. Ass'n, Inc., 439 F.3d 545, 549 (9th Cir. 2006) (citation omitted).

ENT Hawaii argues that there is ancillary jurisdiction over the instant case because the arbitrator awarded to Petitioners, as contract damages, the attorneys' fees and costs that the Original Plaintiffs incurred in Eggs 'N Things #1 and the award is contrary to the Fee F&R and the Fee Order, which both concluded that the Original Plaintiffs were not entitled to recover attorneys' fees and costs in Eggs 'N Things #1. ENT Hawaii contends that the Arbitration Decision effectively nullifies the Fee F&R and the Fee Order and therefore ancillary jurisdiction exists for the district court to vindicate its authority and effectuate its orders in Eggs 'N Things #1.

ENT Hawaii's argument is misplaced. First, the Stipulated Injunction did not specifically address the Original Plaintiffs' breach of contract claim against ENT Hawaii. Even if the Stipulated Injunction adopted the TRO Order's analysis of the breach of contract claim, the TRO Order merely found that the Original Plaintiffs established a likelihood of success on the merits of the breach of contract claim. [Eggs 'N Things #1, TRO Order, filed 5/27/10 (dkt. no. 26) at 8.] There was no ultimate ruling that either the Original Plaintiffs or the Original Defendants prevailed on the breach of contract claim. The Fee

Order denied the Original Plaintiffs' request for attorneys' fees
and costs against FB; the Fee Order does not purport to address
the Original Plaintiffs' entitlement to recover attorneys' fees
and costs from ENT Hawaii. Fee Order, 2011 WL 676226, at *3 ("In
their Motion for Attorneys' Fees, Plaintiffs argued that they are
entitled to attorneys' fees because they are prevailing parties
**against FB** pursuant to HRS §§ 480-13 and/or 481A-4(b)." (emphasis
added)); <u>id.</u> at *5 ("the attorneys' fee issue is directed **to FB
only**" (emphasis added)). The Fee F&R did allude to the Original
Plaintiffs' right to recover attorneys fees based on the breach
of contract claim against ENT Hawaii. Fee F&R, 2010 WL 5834799,
at *9 ("To the extent that the Stipulated Injunction adopted the
district judge's analysis in the TRO Order, Plaintiffs **arguably
could have moved** for attorneys' fees pursuant to Haw. Rev. Stat.
§ 607-14. The Court, however, expresses **no opinion** as to whether
such a motion would have been successful because Plaintiffs'
failure to file a timely motion for attorneys' fees pursuant to
§ 607-14 waived any claim to such fees." (footnote omitted)
(emphases added)). It is clear, however, that the Fee F&R made
no findings on the issue whether the Original Plaintiffs were or
were not entitled to recover attorneys' fees from ENT Hawaii
based on the breach of contract claim. Morever, it is the Fee
Order that controls as the final ruling on the Original
Plaintiffs' motion for attorneys' fees. The Fee Order did not

even mention the issue of the Original Plaintiffs' right to attorneys' fees from ENT Hawaii based on the breach of contract claim.

Thus, none of the orders in Eggs 'N Things #1 contained a ruling on the Original Plaintiffs' breach of contract claim against ENT Hawaii or on the Original Plaintiffs' entitlement to attorneys' fees and costs associated with that claim. The Court therefore rejects ENT Hawaii's argument that the arbitrator's award to Petitioners of the attorneys' fees and costs that the Original Plaintiffs incurred in Eggs 'N Things #1 as contract damages nullified the district court's orders in Eggs 'N Things #1. Further, the Court CONCLUDES that, insofar as there is no conflict between the orders in Eggs 'N Things #1 and the Arbitration Decision, this Court does not have ancillary jurisdiction over the instant case to vindicate the district court's authority and effectuate the orders in Eggs 'N Things #1.

### C. **Federal Question Jurisdiction**

Section 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law when "federal law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of Cal. v. Constr.

<u>Laborers Vacation Tr. for S. Cal.</u>, 463 U.S. 1, 27–28 (1983),

*superseded by statute on other grounds*, 28 U.S.C. § 1441(e).

Whether a claim "arises under" federal law for purposes of

removal is determined by the well-pleaded complaint rule.  <u>Rivet</u>

<u>v. Regions Bank of La.</u>, 522 U.S. 470, 475 (1998).  In the instant

case, Petitioners seek confirmation of the arbitration decisions

pursuant to Haw. Rev. Stat. §§ 658A-22 and 658A-25.  [Petition at

2.]  The Petition does not refer to any federal law issues.

Under the well-pleaded complaint rule, there is no federal

question jurisdiction over the instant Petition.  <u>See</u> <u>Collins v.</u>

<u>Blue Cross Blue Shield of Mich.</u>, 103 F.3d 35, 37-38 (6th Cir.

1996).

The Ninth Circuit, however, has also recognized that

there is federal question jurisdiction over a petition to confirm

or vacate an arbitration award if the arbitrator manifestly

disregarded applicable federal law.  <u>Luong v. Circuit City</u>

<u>Stores, Inc.</u>, 368 F.3d 1109, 1112 (9th Cir. 2004).  The rationale

behind the rule is that

> [i]n contrast to grounds of review that
> concern the arbitration process itself-such
> as corruption or abuse of power-review for
> manifest disregard of federal law necessarily
> requires the reviewing court to do two
> things: first, determine what the federal law
> is, and second, determine whether the
> arbitrator's decision manifestly disregarded
> that law.  This process so immerses the
> federal court in questions of federal law and
> their proper application that federal

> question subject matter jurisdiction is
> present.
>
> Greenberg [v. Bear, Stearns & Co.], 220 F.3d [22,]
> 27 [(2d Cir. 2000)]. . . .
>
> . . . "Manifest disregard of the law means
> something more than just an error in the law or a
> failure on the part of the arbitrators to
> understand or apply the law." Mich. Mut. Ins. Co.
> v. Unigard Sec. Ins. Co., 44 F.3d 826, 832 (9th
> Cir. 1995) (internal quotation marks omitted).
> "It must be clear from the record that the
> arbitrators recognized the applicable law and then
> ignored it." Id.

Id. The Court notes that, following the United States Supreme
Court's decisions in Hall Street Associates v. Mattel, Inc., 552
U.S. 576 (2008), and Stolt-Nielsen S.A. v. AnimalFeeds
International Corp., 130 S. Ct. 1758 (2010), there is a circuit
split on whether the manifest disregard of applicable federal law
is a valid ground for vacating an arbitration award under the
Federal Arbitration Act. See, e.g., Royal Bank Am. v.
Kirkpatrick, Civil Action Nos. 11-1058, 11-1112, 2011 WL 4528349,
at *4 (E.D. Pa. Sept. 30, 2011) (citing Paul Green Sch. of Rock
Music Franchising L.L.C. v. Smith, 389 Fed. Appx. 172, 176-77 (3d
Cir. 2010)). The split, however, is not relevant to the instant
Motion because Petitioners seek confirmation of the arbitration
decisions pursuant to state law and, as discussed *infra*, there
was no manifest disregard of applicable federal law in the
arbitration.

ENT Hawaii argues that the arbitrator manifestly disregarded the orders in Eggs 'N Things #1 when he awarded Petitioners attorneys' fees and costs that the Original Plaintiffs incurred in that case. [Mem. in Opp. at 15.] This Court has already concluded that there is no conflict between the orders in Eggs 'N Things #1 and the Arbitration Decision.

The Court also notes that, in the portion of ENT Hawaii's memorandum in opposition to the Motion discussing ancillary jurisdiction, it argues that "the Arbitrator even awarded Petitioners fees greater than those that would have been awarded by the Federal Court (had ENT International and ENT Japan been successful with their fee application in [Eggs 'N Things #1]." [Id. at 12-13.] In its Motion to Vacate, ENT Hawaii argued that the arbitrator manifestly disregarded federal case law in determining the reasonable hourly rates for Petitioners' counsel, Paul Alston, Esq., and other attorneys and staff in his law firm. [Mem. in Supp. of Motion to Vacate, filed 10/21/11 (dkt. no. 12), at 16-18.] The Court need not address this argument because ENT Hawaii did not raise it in the memorandum in opposition to the instant Motion. For the sake of completeness, however, the Court notes that, if it did address the argument, the Court would find that there was no manifest disregard of the applicable federal law. In determining the amount of attorneys' fees to award as a measure of damages in a state-law contract

claim, the arbitrator was not bound by federal cases finding reasonable hourly rates for prevailing parties in civil rights actions under federal law, or even by federal cases finding reasonable hourly rates in diversity actions where the prevailing parties were entitled to attorneys' fees under Hawai`i law. ENT Hawaii's argument may have had some merit if this district court, in the context of the request for attorneys' fees from FB, had made a determination of the reasonable hourly rates for work that counsel for the Original Plaintiffs performed in Eggs 'N Things #1. There was, however, no award of attorneys' fees in Eggs 'N Things #1, and thus this district court never addressed the reasonable hourly rates for counsel's work in Eggs 'N Things #1.

This Court therefore CONCLUDES that there is no federal question jurisdiction based on the manifest disregard of applicable federal law.

**D.    ENT Hawaii's Other Arguments**

Insofar as this Court has rejected ENT Hawaii's assertion of diversity jurisdiction, continuing jurisdiction, ancillary jurisdiction, and federal question jurisdiction, this Court need not address ENT Hawaii's argument that the Court has supplemental jurisdiction over the remaining claims.

ENT Hawaii also argues that, if this Court concludes that it does not have jurisdiction over the instant case, the Court must consider whether it should vacate the orders in Eggs

33

'N Things #1 and "the fruit of those Orders, including the Arbitration Award." [Mem. in Opp. at 20.] First, as previously noted, the parties did not arbitrate pursuant to any order issued in Eggs 'N Things #1. Thus, even assuming *arguendo* that the district court lacked jurisdiction at any point in Eggs 'N Things #1, the arbitration decisions are not the "fruit" of the orders in Eggs 'N Things #1. Second, in the Fee Order, Judge Seabright concluded that he had jurisdiction to rule on the Original Plaintiffs' motion for attorneys' fees against FB. Eggs 'N Things #1, 2011 WL 676226, at *6. Even assuming *arguendo* that the district court lacked jurisdiction when it entered the TRO Order and the Stipulated Injunction, this Court need not remedy that situation in the context of the instant action because reviewing either the Petition or the Motion to Vacate does not require enforcement of the TRO Order or the Stipulated Injunction. The TRO Order and the Stipulated Injunction merely required the Original Defendants to remove the Disclaimer and to refrain from posting or publishing false or misleading statements about the ENT brand in Japan or the Harajuku restaurant; those orders did not include ultimate rulings on the merits of the Original Plaintiffs' claims. The arbitrator's rulings on Petitioners' claims were based on the testimony received and the proceedings conducted in the arbitration, as well as the collateral estoppel effect of Judge Seabright's findings in the

Fee Order, which Judge Seabright ruled he had jurisdiction to issue. If ENT Hawaii wishes to have the Stipulated Injunction vacated because the district court lacked jurisdiction to issue it, the instant action is not the appropriate forum to seek such relief.

## III. **Petitioners' Request for Removal Fees and Costs**

Section 1447(c) states, in pertinent part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

> The Supreme Court settled the standard for awarding attorney's fees when remanding a case to state court in <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). The Court held that "the standard for awarding fees should turn on the reasonableness of the removal." <u>Id.</u> at 141, 126 S. Ct. 704. As the Court put it, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." <u>Id.</u>

<u>Lussier v. Dollar Tree Stores, Inc.</u>, 518 F.3d 1062, 1065 (9th Cir. 2008) (alteration in <u>Lussier</u>) (footnote omitted).

The law regarding federal jurisdiction over a petition to confirm or vacate an arbitration award is well settled. The jurisdictional dispute in the instant case was based upon ENT Hawaii's characterization of the proceedings in <u>Eggs 'N Things #1</u>. ENT Hawaii's claim of federal jurisdiction over this case

was essentially based on the following assumptions: the district court's orders in Eggs 'N Things #1 compelled the parties to arbitrate; the district court in Eggs 'N Things #1 retained jurisdiction over the arbitration; the existence of diversity jurisdiction in Eggs 'N Things #1 ensured diversity jurisdiction in the instant case; and the Fee Order ruled that the Original Plaintiffs were not entitled to recover attorneys' fees and costs incurred in Eggs 'N Things #1 from ANY party under ANY legal theory. The Court finds that these assumptions are unreasonable interpretations of the factual and procedural history of Eggs 'N Things #1. Insofar as ENT Hawaii's asserted bases for removal were based on an unreasonable interpretation of Eggs 'N Things #1, the Court CONCLUDES that ENT Hawaii lacked an objectively reasonable basis for seeking removal in the instant case. Petitioners' request for removal related expenses, including attorneys' fees, pursuant to § 1447(c) is therefore GRANTED.

## CONCLUSION

On the basis of the foregoing, Petitioners' Motion to Remand for Lack of Subject Matter Jurisdiction and for Attorneys' Fees, filed under seal on November 4, 2011, is HEREBY GRANTED. The Court GRANTS Petitioners' request for expenses, including attorneys' fees, associated with removal, and REFERS the determination of the amount of such award to the magistrate judge. The Court ORDERS the Clerk's Office to remand the case to

the State of Hawai`i Circuit Court of the First Circuit.  The
Court notes that it retains jurisdiction over this case for
collateral matters, including the remand-related attorneys' fees
and costs issue and the determination of what portions of this
Order must remain under seal.  See Moore v. Permanente Med. Grp.,
Inc., 981 F.2d 443, 445 (9th Cir. 1992).

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 17, 2012.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

**EGGS 'N THINGS INT'L HOLDINGS PTE. LTD., ET AL. V. ENT HOLDINGS
LLC; CIVIL NO. 11-00626 LEK-KSC; ORDER GRANTING PETITIONERS'
MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR
ATTORNEYS' FEES**